IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| MICHAEL ARIC ANDERSON, | ) | Civil No. 05-379-JO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

David B. Lowry
Attorney at Law
9900 S.W. Greenburg Road, Suite 235
Portland, OR 97223

Tim D. Wilborn
Attorney at Law
2020-C S.W. Eighth Avenue
PMB #294
West Linn, OR 97068

 Attorneys for Plaintiff

Franco L. Becia
Michael McGaughran
SOCIAL SECURITY ADMINISTRATION
701 Fifth Avenue
Suite 2900 M/S 901
Seattle, WA  98104-7075

Neil J. Evans
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902

JONES, Judge:

Plaintiff Michael Anderson seeks judicial review of a final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") disability benefits under the Social Security Act.  *See* 42 U.S.C. §§ 416 and 423.  This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a careful review of the record, I conclude that the case must be remanded for further proceedings under sentence four of 42 U.S.C. § 405(g).

## ADMINISTRATIVE HISTORY

Plaintiff was born on April 3, 1969; he was twenty-two years old on December 31, 1991, the date on which he alleges his condition became disabling.[1]  Tr. 73.  Plaintiff protectively filed his applications for DIB and SSI on September 15, 1997, alleging that he was disabled due to manic depression, and symptoms of irritability, racing thoughts, lack of concentration, depression, and anxiety. Tr. 73-75, 81, 433.  Both applications were denied initially and on reconsideration.  Tr. 54-57, 60-62.  Plaintiff requested a hearing, which was held before an

---

[1] Citations to the official transcript of record are referred to throughout as "Tr."

Administrative Law Judge ("ALJ") on June 9, 1999. Tr. 15. Plaintiff, who was represented by counsel, appeared and testified. Id. The ALJ also heard testimony from plaintiff's father, Justin Anderson; plaintiff's wife, Patricia Anderson; and a vocational expert ("VE"). On September 23, 1999, the ALJ issued a decision denying plaintiff's applications and finding that he was not disabled as defined by the Social Security Act ("SSA"). Tr. 12, 19. The ALJ's decision became the final decision of the Commissioner on April 27, 2001, when the Appeals Council declined review.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *see also* Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); Andrews, 53 F.3d at 1039-40.

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ engaged in the five-step "sequential evaluation" process when he evaluated plaintiff's disability, as required. *See* 20 C.F.R. §§ 404.1520, 416.920. Steps 1 through 4 are not at issue in this case. (Pl.'s Brief at 13.) At these steps, the ALJ found that plaintiff was not

currently engaged in substantial gainful activity; that he has severe impairments; that his impairments do not meet or equal any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; and that he is unable to perform his past relevant work. Tr. 18-19. However, plaintiff disputes the ALJ's Step 5 finding that he retains the residual functional capacity ("RFC") to perform work that exists in significant numbers in the national economy, and argues that his combined impairments are severe enough to render him disabled.

At Step 5, the Commissioner determines whether the claimant has the residual functional capacity ("RFC") to perform any other work. 20 C.F.R. § 416.920(g). If the claimant is not able to perform other work, he is disabled. The Commissioner has the burden of showing that a claimant can perform jobs that exist in significant numbers in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). The Commissioner may meet this burden with the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2. If the Commissioner demonstrates that there are a significant number of jobs that the claimant can perform, then the claimant is not disabled. Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(g)(1).

After summarizing the medical evidence, the ALJ determined that plaintiff had the RFC to perform the physical requirements of medium work, so long as it did not involve working with dangerous machinery or heights, and provided that the work was simple, unskilled, and required minimal interaction with others. Tr. 18-19. Given the hypothetical limitations outlined by the ALJ, which included a deficit of concentration and attention, the VE identified 210,000 janitorial jobs, 119,000 housekeeping jobs, and 126,000 laundry worker jobs in the national economy, any of which someone with plaintiff's RFC could perform. Tr. 18, 460-62. The ALJ found that the

applicable Medical-Vocational Guidelines would direct a conclusion of "not disabled." Tr. 19. However, the ALJ acknowledged that plaintiff's additional nonexertional limitations would preclude him from performing all of the requirements of medium work, and accordingly found that, considering the VE's testimony, plaintiff's exertional capacity, age, education, work experience, and RFC (including his specific nonexertional limitations), plaintiff could be employed as a janitor, housekeeper, or laundry worker. Tr. 19. Consequently, the ALJ concluded that plaintiff was not disabled as defined by the SSA, and denied his applications for DIB and SSI benefits. Tr. 20.

## STATEMENT OF FACTS

The parties are familiar with the medical and other evidence of record. I will not, therefore, repeat the evidence except as necessary to explain my decision. I note, however, that historically, plaintiff demonstrated significant behavioral (aggression) and learning problems from the age of six onward, and the record indicates that he was ultimately expelled from high school when he was sixteen (during the 11th grade) for selling contraband items (cigarettes and alcohol).[2] Tr. 132, 248-49, 254-55, 312, 376; Pl.'s Brief at 2. Plaintiff has a criminal record, beginning at age twenty, when he was convicted twice for possession and distribution of cocaine; he has also been convicted of Assault IV; and of discharging a firearm within the city limits of Seaside, Oregon. Tr. 296-97, 312, 376-77; Pl.'s Brief at 2. His problems with aggression and antisocial behavior have limited his success at keeping a job; until 1997, he worked sporadically as a gas station attendant, and at various car dealerships as a lot attendant,

---

[2] There are varying reports in the record as to whether plaintiff completed high school; on his disability report, he attests that he completed 12th grade in June of 1986. Tr. 83.

5 - OPINION AND ORDER

auto detailer, and salesman, but quit or was fired when he threatened co-workers, had homicidal thoughts, and on one occasion brought a grenade to work. Tr. 104, 114, 312, 316. Plaintiff is married, and has three minor children. Tr. 73, 457.

## DISCUSSION

Plaintiff challenges the ALJ's disability determination on several grounds. First, plaintiff asserts that the ALJ improperly evaluated the medical evidence. Second, plaintiff asserts that the ALJ improperly rejected his testimonial evidence, as well as that provided by his mother, father, and wife. Third, plaintiff asserts that the ALJ's Step 5 finding was deficient because the hypothetical question the ALJ posed to the VE did not include all of his limitations, many of which he contends could have been characterized as severe.

**1.     The ALJ's Evaluation of the Medical Evidence**

The opinion of a physician "is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002). Rather, the ALJ bears the responsibility for determining credibility, resolving any conflicts in the medical testimony, and resolving ambiguities. *See* Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). I find that the ALJ, as required, provided a thorough summary of the facts and conflicting clinical evidence, stated his interpretation thereof, and made findings "supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Plaintiff claims that the ALJ improperly interpreted the mental health assessment of a consultative examiner, Dr. Birney, as diagnosing plaintiff as a malingerer. (Pl.'s Brief at 14.) Plaintiff is correct that the ALJ mis-stated Dr. Birney's diagnosis; on February 10, 1999, Dr. Birney actually diagnosed "rule out malingering," because plaintiff's MMPI-2 profile was not

valid. Tr. 17, 379. Dr. Birney speculated that plaintiff either answered the MMPI-2 questions randomly, gave "fake bad" responses, or failed to understand the test items. Tr. 378. Dr. Birney also noted, "[t]here were some inconsistencies in the information claimant disclosed and what is in the records. . . . [t]hus, he is not considered to be a totally reliable informant." Tr. 375. Ultimately, Dr. Birney diagnosed plaintiff with amnestic disorder, NOS; bipolar I disorder; panic disorder without agoraphobia (by his report); borderline intellectual functioning; antisocial personality disorder with explosive traits; and possible seizure disorder. Tr. 379. The ALJ did not entirely discredit Dr. Birney's report; instead, he interpreted it with other evidence in the record to support his overall finding that plaintiff's various mental impairments did not preclude work activity. Tr. 17.

Dr. Birney's report is not inconsistent with the other observations of mental health professionals. When another consultative examiner, Dr. Christopherson, met with plaintiff on October 24, 1997, he also included "rule out malingering" in his diagnosis after receiving information from sources that, despite plaintiff's refusal to admit to being employed, he operated a mobile auto detailing shop out of a van. Tr. 299-300. Dr. Christopherson diagnosed plaintiff with "[p]ersonality disorder, NOS with avoidant and schizoid traits [and] [m]ild to moderate stressors." Tr. 299. Nevertheless, Dr. Christopherson concluded, "I see no reason in the world as why this individual is not working except as stated, he has elected not to work," and gave the opinion that plaintiff had been "free loading off his father and now wants to do the same off the government." Id.

Plaintiff sought a "medication evaluation" at Clatsop Behavioral Healthcare Center ("CBHC") in October 1997, at the request of a licensed clinical social worker. Tr. 315. Nurse

7 - OPINION AND ORDER

practitioner Debora Stout found that plaintiff met the criteria for a diagnosis of antisocial personal disorder, but that he did not display sufficient symptoms to support a diagnosis of bipolar disorder. Tr. 318-19. At CBHC, plaintiff received some counseling for anger management and anxiety, as well as medication (Trazodone) to address his complaints of insomnia. Tr. 308-19. After approximately three months of minimal treatment, plaintiff threatened the life of a counselor, and CBHC terminated his treatment, noting that he was "not appropriate for services." Tr. 305, 308. Although plaintiff contends that the ALJ did not properly credit Stout's diagnosis and other evidence from CBHC, I find that the ALJ did in fact give these "other sources" appropriate weight. Because neither Stout nor the counselors are considered to be "acceptable medical source[s]" under the applicable regulations, their observations are limited to showing the severity of plaintiff's impairments as they impacted his ability to work. *See* C.F.R. §§ 404.1513, 416.913. Nothing in the CBHC records precludes the ALJ's finding that plaintiff retains the RFC to perform "medium" work, with some limitations.

The ALJ adopted -- in its entirety -- the RFC outline dated December 21, 1998, from plaintiff's treating physician, Dr. Ford, who diagnosed him with "possible temporal lobe epilepsy," and noted that plaintiff was seizure-free since taking the medication Tegretol. Tr. 17, 403-07. The record as a whole contains substantial evidence to support the ALJ's finding that "[t]he evidence, in its entirety, depicts a man with serious anger problems and some yet unaddressed mental health problems," but whose conditions do not prevent him from working.

8 - OPINION AND ORDER

Tr. 17. Based on my review of the record, I find that the ALJ's conclusions are a rational interpretation of the medical evidence in this case.[3]

## 2.     **The ALJ's Credibility Determinations and Rejection of Testimonial Evidence**

Plaintiff asserts that the ALJ erred by failing to give clear and convincing reasons for determining that his and lay witnesses' testimony was not entirely credible. Plaintiff contends that his testimony that he had difficulty sleeping five nights a week, fatigue, violent bouts of anger, depression, chronic incapacitating daily headaches, crying spells lasting seven or eight hours two to four times per week, difficulty adding and subtracting small numbers, inability to multiply, divide or compute decimals or fractions, antisocial behavior, difficulty paying attention, memory problems, feeling of being overwhelmed at work, and side effects such as lethargy from medication should be credited as a matter of law. Plaintiff also argues that the ALJ failed to give "germane reasons" for rejecting the testimony of his mother, father, and wife, which verified his complaints of sleep problems, fatigue, lack of energy, headaches, violent anger outbursts, crying spells, isolation, antisocial behavior, distractibility, memory problems, impulsiveness, and lack of self-control. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993),

---

[3]     Although plaintiff conceded that Steps 1 through 4 are not at issue, he challenges the ALJ's Step 2 determination as being under-inclusive because the ALJ found "borderline personality disorder" to be plaintiff's only "severe" impairment based on the relevant medical evidence in the record (childhood ailments and treatment received before the alleged onset of disability were considered only for their historical context). (Pl.'s Brief at 13, 18-19.) The case he cites as dispositive, Webb v. Barnhart, 433 F.3d 638, 688 (9th Cir. 2005), involved a finding of "no disability" at Step 2. It is inapplicable here, because the ALJ made a finding of a severe impairment at Step 2, so that the disability inquiry continued. The ALJ did not err by summarizing the inconsistent diagnoses of plaintiff's various mental impairments as severe "borderline personality disorder" at Step 2, and then including at Step 5 more specific limitations, which were based on symptoms found to be credible during the RFC determination.

9 - OPINION AND ORDER

If an ALJ finds that a claimant's testimony is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit the claimant's testimony. Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). In making this determination, the ALJ may consider the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that seems less than candid; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities. Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ has a duty to make credibility determinations. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." Thomas, 278 F.3d at 959. In this case, the ALJ did not discuss particular inconsistencies between plaintiff's testimony and the medical record, but did specifically find that his complaints were disproportionate to the weight of medical evidence and thus were not fully credible. Tr. 19. The ALJ also noted that plaintiff had not sought regular treatment or medication for bipolar disorder since the age of 14, and that "the only mental health treatment he has received since his onset date occurred at Clatsop Behavioral Healthcare Center. . . . [which] was minimal and it was terminated after 3 months." Tr. 17. Plaintiff's medical records show that he consistently complained of insomnia, which was successfully treated with the medication Trazodone, and that he was being treated successfully for a seizure disorder. Missing from the record is any objective medical evidence of consistent complaints or treatment for the severe headaches or frequent and lengthy crying spells about which plaintiff and the lay witnesses testified.

In addition, even though the ALJ mischaracterized "malingering" as a "diagnosis," he cited affirmative evidence of malingering in the record, particularly Dr. Christopherson's report, and noted that plaintiff's treating physician, Dr. Ford, did not find his impairments to be so severe that he was incapable of working. Tr. 17. Because the record contains evidence of malingering, the ALJ was not required to provide "clear and convincing" reasons for discrediting plaintiff's testimony. *See* Morgan v. Commissioner of Social Security Admin., 169 F.3d 595, 599 (9th Cir. 1999) (finding claimant's testimony related to mental health limitations to be unreliable based on inconsistency with medical records). Instead, to reject plaintiff's subjective complaints, the ALJ needed to provide "'specific, cogent reasons for the disbelief,'" *see* id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)), that were sufficiently specific to permit a reviewing court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. Thomas, 278 F.3d at 958. I find that the ALJ's credibility determination regarding plaintiff is supported by substantial evidence in the record and is free from legal error.

Regarding the testimony of the lay witnesses, the ALJ's written opinion is silent as to why he did not fully credit the testimony of plaintiff's mother, father and wife. The Commissioner contends, relying on Vincent ex rel. v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984), that it was not error for the ALJ to disregard, without any discussion or explanation, the lay testimony regarding plaintiff's symptoms, including headaches, crying spells, and aggressive antisocial behaviors. (Def.'s Brief, at 12). The Commissioner's argument fails, because the Ninth Circuit has expressly limited the holding in Vincent to permit an ALJ to disregard lay witness testimony without comment only if the witness is making a medical diagnosis, because

11 - OPINION AND ORDER

medical diagnoses are beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).

In contrast, however, "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence, and therefore *cannot* be disregarded without comment." Id. (internal citations omitted; emphasis in original). In this case, as in Nguyen, plaintiff's mother, father, and wife testified about the severity, frequency and physical manifestations of his impairments, as well as other symptoms not included in the medical record. The ALJ's failure to take the lay witnesses' testimony into account or expressly determine to disregard the testimony and give reasons that are "germane to each witness" is legal error requiring a remand. *See* Nguyen, 100 F.3d at 1467.

**3.      The Hypothetical Presented to the Vocational Expert**

Plaintiff's contention regarding Step 5 is that the hypothetical question presented to the VE did not accurately represent his impairments, because it failed to include all of his limitations. The ALJ's hypothetical did take into account what a person could do who had a "deficient of concentration and attention," and who would be restricted to "simple work, not complex." With these additional limitations, the VE found several jobs that plaintiff could perform, including janitorial work, light housekeeping, warehouse worker, or laundry worker. Tr. 460. When further questioned by the ALJ about what jobs could be performed by a person who was "not predictable and [suffered] uncontrolled anger due to [a] medical condition," the VE testified that the ability to follow through with tasks may be impaired by overwhelming anger, and the person would have difficulty keeping a job even as a janitor or housekeeper

because such jobs require that a certain amount of cleaning be done to certain standards. Tr. 462-63.

Upon further inquiry by plaintiff's attorney, who added limitations to the hypothetical to include painful headaches that occurred nearly every day and lasted for hours, crying spells that occurred two or three times per week and lasted for hours, and insomnia, the VE testified that the headaches, crying spells, and poor stamina from lack of sleep would cause an inability to follow through on tasks, and when a supervisor checked the hypothetical person's work, he or she likely would be terminated, even from the jobs previously identified. Tr. 464-65. If the ALJ had fully credited the lay witness testimony, which described the above symptoms, plaintiff's limitations would have prevented him from working on a regular and sustained basis, as is required for a finding of "not disabled."

As discussed above, the ALJ's written opinion is silent as to why he did not fully credit the testimony of plaintiff's mother, father and wife and, accordingly, the ALJ failed to give reasons germane to each witness before discrediting the testimony. Because this error affects the ALJ's assessment of plaintiff's RFC and the Step 5 analysis, further proceedings are necessary to determine whether plaintiff's limitations should include headaches, crying spells, and insomnia of sufficient severity to prevent him from completing tasks in a timely manner and, ultimately, sustaining competitive employment.

**4.    Scope of the Remand**

The decision whether to remand for further proceedings or to award benefits is within the court's discretion. See Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987); see also Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir. 1993). The Ninth Circuit has articulated standards by which

13 - OPINION AND ORDER

this court is to decide whether to remand for further proceedings or simply for an award of benefits.  A case should be remanded for an award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d at 1292; *see also* Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).

In this case, a remand for an award of benefits is inappropriate because there are still outstanding issues with regard to plaintiff's RFC that must be resolved.  The record before this court, which contains evidence of malingering and exaggeration, does not permit a determination of disability or non-disability, nor does it compel the conclusion that the ALJ would be required to find this plaintiff disabled.  Consequently, remand for further proceedings rather than an award of benefits is appropriate.  *See* Benecke, 379 F.3d at 593.

## **CONCLUSION**

For the foregoing reasons and based on my review of the record, the Commissioner's decision denying plaintiff disability insurance benefits under Title II, and Supplemental Security Income disability benefits under Title XVI of the Social Security Act is REVERSED and this matter is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 19th day of June, 2006.

/s/ Robert E. Jones

14 - OPINION AND ORDER

ROBERT E. JONES
U.S. District Judge

15 - OPINION AND ORDER